# CASES

IN THE

# SUPREME JUDICIAL COURT,

IN THE

COUNTY OF CUMBERLAND, APRIL TERM, 1841.

―――――

PHILIP GREELEY & al. vs. JOSHUA M. WATERHOUSE.

Bottomry bonds may be executed by the owner of a ship at a home port, and their validity does not depend upon the application of the money, when obtained by the owner, to the purposes of the ship or of the voyage.

It is of the essence of a bottomry bond that it is for money taken up on a maritime risk.

When bottomry bonds are given as collateral security for debts due, that fact may be shown when the interests of third persons are thereby to be affected, notwithstanding the recital in the bond, that they are given for money lent and advanced.

When a bottomry bond is given to secure past indebtedness, if that were discharged to the amount of the security by bottomry, it would seem that it might be regarded as a new loan on bottomry.

When unaccompanied by delivery, such bond cannot be regarded as a mortgage, unless recorded, as required by St. of 1839, c. 390.

THIS was replevin for the brig Albert and for two thirds of the brig Watson.

It appeared in evidence, that Luther Jewett, prior to Oct. 26, 1839, was indebted to the plaintiffs to an amount exceeding seven thousand dollars, for advances by them made to him; that on that day he executed, at Portland, in pursuance of the request of the plaintiffs, in their letters previous to that date, bottomry bonds of the brig Albert and of two thirds of the

VOL. I. 2

brig Watson, which bonds he transmitted by letter, dated Oct. 28, 1839, to the plaintiffs who were merchants residing at Boston. The plaintiffs acknowledged by letter of Oct. 29, 1839, the receipt of these bonds.

It appeared from the testimony of George Jewett, who was an endorser on the drafts drawn by Luther Jewett on the plaintiffs, and which had been accepted and paid by them, that, at the time of the execution of these bottomry bonds, Luther Jewett was indebted to the plaintiffs in a much greater amount than the sum thereby secured, and so continued indebted; and, though the bonds recited that the sum of thirty-six hundred dollars had been on the day of the execution of the bonds lent and advanced on the brig Albert, and two thousand dollars on the said Jewett's interest in the brig Watson, at bottomry for one year, that in fact no new advances were made, nor new credits given by the plaintiffs at that time, but that the said bonds were given to secure prior existing debts.

The defendant justified as a deputy sheriff, by virtue of a writ in favor of the Exchange Bank against Luther Jewett, on which the vessels replevied were returned as attached on the 29th Oct., 1839, at half past eleven o'clock.

It was agreed that the plaintiffs' right to recover should not be prejudiced by reason of the credit of one year given in the bonds, but their rights should be regarded as good as if the suit had been after the expiration of the credit and failure of payment.

The defendant's counsel objected to the testimony of the plaintiffs, but consented to be defaulted, subject to the opinion of the Court whether the plaintiffs on this testimony or so much thereof as may be legal, are entitled to recover; if they are, judgment is to be for them, if not the default is to be taken off and the plaintiffs are to become nonsuit.

*Rand,* for the defendant. These are not bottomry bonds. They fail in every essential requisite to make them so. The *Draco,* 2 Sum. 157; *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386. No advances were made on the strength of these bonds, but they were given to secure previous debts. There is no estoppel

by reason of the recital in the bond that it was given to secure advances. Co. Lit. 352, a; *Clapp* v. *Tyrrel*, 20 Pick. 247.

A bottomry bond is a contract for a loan of money, on the bottom of a ship, at an extraordinary interest, upon maritime risk to be borne by the lender, for a definite period. Each and all of these elements are wanting in the case at bar. This is the mere case of taking collateral security, and had the vessel been lost the debt would still have remained.

*Fessenden & Deblois,* for the plaintiffs, maintained the following positions:

1. George Jewett was properly admissible as a witness. *Adams* v. *Carver*, 6 Greenl. 392; *Buck* v. *Appleton*, 14 Maine R. 284; *Warren* v. *Merry*, 3 Mass. R. 27.

The indorser is under no obligation in any case to the accepter unless in case of an acceptance for his honor. Chitty on Bills, 122.

2. The delivery was seasonable, the bonds having been received on 29th Oct. by the plaintiffs; but whether they reached the plaintiffs before the attachment or not, still, inasmuch as the bonds were made by the previous directions of the plaintiffs, they were accepted as soon as made, and the transaction was perfected. *Harrison* v. *Trust. Phil. Acad.* 12 Mass. R. 461; *Wheelwright* v. *Wheelwright*, 2 Mass. R. 447. A delivery to the Register of deeds by the grantor for the use of the grantee, to be recorded, or to a third person for the same purpose, is effectual, and the assent of the grantee will be presumed. *Hatch* v. *Hatch & al.*, 9 Mass. R. 307; *Verplanck* v. *Sterry*, 12 Johns. R. 551; *Doe* v. *Knight*, 5 B. & C. 671; *Hedge & al.* v. *Drew*, 12 Pick. 141; *Copeland* v. *Weld*, 8 Greenl. 411; *Will* v. *Franklin*, 1 Bin. 502. It is when committed to a third person the deed of the grantor presently. *Ward* v. *Lewis & al.* 4 Pick. 520.

3. The plaintiff could legally take security by means of bottomry bond for pre-existing debts.

The distinction is strongly marked between the powers which the master and the owner of a ship have to encumber the ship with a bottomry bond for the security of the payment of money.

The master has no power at places where the owners reside, nor abroad except in case of great extremity, or for the completing the voyage, to take up money on bottomry.    Molloy, b. 11, c. 11, § 11 and 12.    Extreme necessity is the only justification for the master.    The *Hunter*, Ware's R. 249.

The owner may obtain money on bottomry in a *foreign* or *home* port; and it is not necessary the money should be advanced for the necessities of ship, cargo, or voyage.    The essence of a bottomry bond is that the money be taken upon maritime risk, at the hazard of the lender; it is not necessary, that it should be employed in the outfit of the vessel or invested in goods on which the risk is run; nor is it material when the loan is made, nor upon what the risk is run.    The *Draco*, 2 Sum. 157; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 436–7; *Thorndike* v. *Stone*, 11 Pick. 183; *Simonds* v. *Hodgdon*, 3 B. & Adolph. 50, 56.    It is only essential that if the subject on which the money be taken is lost by sea-risk or superior force, the lender shall lose his money; and that if the voyage be successful, the sum shall be repaid with a certain profit or consideration for interest and risk as agreed upon.    2 Bell's Com. 83, c. 5, § 1, art. 46; 3 Kent's Com. 2d ed. p. 361.    The borrower may appropriate the money as he chooses, and the mode of its application does not change the rights of the lender.    The *Jane*, 1 Dod. R. 465; *U. S.* v. *Del. Ins. Co.*, 4 Wash. C. C. 418.

It is not necessary to the validity of such bonds that they should be entered into at the precise time when the loan takes place.    *La Ysabel*, 1 Dod. R. 276.    Nor that bills were given, and that the lender looked to the bills, for there is no inconsistency in taking such collateral security.    The *Jane*, 1 Dod. R. 461.

When the master borrows money on bottomry it must appear that the money was not advanced on the personal credit of the owner or any one else, but on the security of the bottomry alone.    The *Augusta*, 1 Dod. R. 283; The *Virgin*, 8 Pet. 538; The *Rhadamanthe*, 1 Dod. R. 206.    But the lender to an owner may look to his personal responsibility.    *Thorndike* v. *Stone*, 11 Pick. 183; Marshall on Ins. 632—6.    The owner

may pledge the vessel for money borrowed or for any purpose. The *Mary*, 1 Paine, 671; *Wilmer* v. The *Smilax*, 2 Pet. Adm. Rep. 295; The *Charles Carter*, 4 Cranch, 328; Abbott on Ship. 162.

In *Hurry* v. The *Ship John & Alice*, 1 Wash. C. C. 293, and *Walden* v. *Chamberlain*, 3 Wash. C. C. 290, it is decided, that a master cannot, leaving it to be inferred that an owner may, give a bottomry bond for a pre-existing debt. See *Miller* v. *Snow Rebecca*, 1 Bee, 151; *Robertson* v. *United Ins. Co.*, 2 Johns. Cases, 250.

The right to sell does not destroy this as a bottomry bond. The debt is at maritime risk, by taking bottomry. The question of whether above six per cent. or not is immaterial. It is not necessary that it should exceed legal interest. The *Aurora*, 1 Wheat. 104; 2 Johns. Cas. 250, and 4 Bin. 244 before cited.

4. If the plaintiff cannot recover on this as a bottomry bond, the instrument is good as a mortgage of the ship. *Holbrook* v. *Baker*, 5 Greenl. 309. Maine St. c. 390, requiring mortgages to be recorded, excepts the case of a ship if the mortgagee shall take possession of such ship or goods as soon as may be after the arrival thereof within the State. The attachment here was before the plaintiff had time to take possession. It may be valid as security for principal and interest. The *Hunter*, Ware's R. 249; *Rucher* v. *Conyngham*, 2 Pet. Adm. Rep. 295.

The opinion of the Court was by

WESTON C. J. — The plaintiffs, as acceptors, having paid the bills, indorsed by George Jewett, he had no remaining interest or liability in relation to them, and was clearly a competent witness. And the interest of Luther Jewett is balanced in the case, it being a contest between bona fide creditors of his for security. The objection made at the trial to the testimony cannot prevail, and is not pressed by the counsel for the defendant.

The doctrine in relation to bottomry and respondentia bonds is very elaborately considered and exhausted by Mr. Justice

Story in *Conard* v. *the Atlantic Ins. Company,* 1 Peters, 386, and in the case of the brig *Draco,* 2 Sumner, 157. He investigates, with his accustomed ability their origin and history, illustrated by adverting to the authorities, English and American, bearing upon the question, as well as to the works of distinguished jurists on the continent of Europe. It is very satisfactorily made out, that they may be executed by the owner of a ship at a home port, and that their validity does not depend upon the application of the money, when obtained by the owner to the purposes of the ship, or of the voyage. But it is of the very essence of a bottomry bond, that it is for money taken up on maritime risks, at the hazard of the lender. Case of the *Draco,* 2 Sumner, 187; *Simonds & al.* v. *Hodgson,* 3 Barn. & Adol. 50.

The instruments, upon which the plaintiffs rely, copies of which make part of the case, are based upon loans apparently of this character. Nothing is there disclosed, which shows that the loans were not made upon the risk, essential to this species of contract. But when the rights and interests of third persons are to be affected, the true nature of the transaction is open to investigation. Property is not to be put out of the reach of vigilant creditors, and the truth shut out by the mere form of instruments. *Clapp* v. *Tirrell,* 20 Pick. 247.

Looking at the facts proved, it appears that the money, intended to be secured by the bonds, was not originally advanced upon the credit or hypothecation of the vessels named in the conditions, but as security for debts, due from Luther Jewett to the plaintiffs, which had accrued some months before, principally for advances on bills drawn on them by Jewett. If the account of the plaintiffs had been thereupon discharged, as far as the same had been secured by the bonds, it might have been regarded virtually as a new loan on bottomry. In *Conard* v. *the Atlantic Ins. Company,* 1 Peters, 435, one of the loans obtained was applied in part to the payment of a prior loan. But in this case the bonds were manifestly proffered and received as collateral security. It does not appear that Jewett was discharged from his indebtedness on account, or as drawer

of the bills, or that he had credit in account for the sums stated to have been advanced by the plaintiffs in the condition of the bonds. From the correspondence it appears, that they were looking to the sales of goods belonging to Jewett under their control, which after the receipt of these bonds, they insist must be made available for their benefit, although the market was unfavorable. In Jewett's letter to the plaintiffs, enclosing the bonds, he advises that he sends them as a guaranty, and as such they must be presumed to have been accepted. The movement appears to have been altogether voluntary on his part. If the security was collateral, which is plainly deducible from the facts, the debt was not at risk, although the collateral security was to be available only upon a contingency. It results, that these instruments cannot have effect as bottomry bonds, as the obligation of the debtor to refund the consideration, upon which they were based, did not depend upon a maritime risk, but remained in force at all events.

It is insisted, however, for the plaintiffs, that if their title cannot be sustained as lenders upon bottomry security, they have a right to hold the vessels in question as mortgagees. It is an objection fatal to their claim upon this ground, that their mortgage was not recorded, as required by the statute of 1839, c. 390. This is dispensed with only where delivery and possession accompanies the mortgage. No delivery was made by Jewett, nor did the plaintiffs attempt to take possession until some time after the bonds were executed. According to the agreement of the parties, the default must be taken off and the plaintiffs became nonsuit.